## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CYNTHIA PARKER, REBA GARTH, MARGARET HERRIN, and SHIRLEY REINHARD, individually and on behalf of all others similarly situated, | Civil Action No. |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | **DEMAND FOR JURY TRIAL** |
| v. | |
| WAL-MART STORES, INC., | |
| Defendant. | |

## INTRODUCTION

1.     Defendant Wal-Mart Stores, Inc., (hereinafter "Defendant") is among the world's largest specialty retailers of dietary supplements. Defendant promises consumers on its website and their supplement labeling that their supplement's ingredients are what they say they are and that they are effective for the purposes for which they are sold.

2.     Defendant breaks that promise and repeatedly violates federal and state law by selling glucosamine supplements with mislabeled ingredients, identifying their contents as glucosamine sulfate, when in fact the supplements contain

glucosamine hydrochloride and potassium sulfate, less expensive ingredients with no proven efficacy.

3.    Defendant has long known that there is scant or conflicting evidence about the effectiveness of glucosamine hydrochloride for the treatment of osteoarthritis, while glucosamine sulfate has been shown to reduce the pain of osteoarthritis, in knees in particular, and can be equally as effective as Tylenol and some nonsteroidal anti-inflammatory drugs.

4.    Nevertheless, Defendant sells its glucosamine products with false and misleading labeling in an effort to dupe consumers into purchasing a questionable supplement for prices that exceed its true value. Defendant pursued this course of conduct in order to profit from supplement sales, and in violation of state and federal law.

5.    Plaintiffs are consumers who were misled by Defendant's false representations into purchasing these mislabeled supplements. Plaintiffs would not have purchased these supplements had Defendant disclosed accurate information about their ingredients.

6.    This is a nationwide consumer class action brought by Plaintiffs on behalf of all individuals (the "Class") who purchased glucosamine sulfate for personal use and not for resale. They assert that Defendant has violated established state consumer protection laws, breached warranties, engaged in negligent

2

misrepresentation, and unjustly enriched itself to the detriment of consumers. Plaintiffs seek damages and equitable relief on behalf of themselves and the proposed classes.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least one hundred members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00, exclusive of interest and costs, and this is a class action in which Defendant and members of the proposed plaintiff class, including named Plaintiffs, are citizens of different states.

8.     This Court may exercise jurisdiction over Defendant because it is registered to conduct business in Missouri; has sufficient minimum contacts in Missouri; and intentionally avails itself of the markets within Missouri through the promotion, sale, marketing, and distribution of its supplements, such that the exercise of jurisdiction by this Court is both proper and necessary.

Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## **PLAINTIFFS**

9.    Plaintiff Cynthia Parker resides in Florissant, Missouri. She purchased Spring Valley glucosamine sulfate at Wal-Mart stores located in Maplewood and Florissant, Missouri, on a near monthly basis from 2013 to 2017 for her own use. She suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of Defendant set forth in this Complaint. Plaintiff Cynthia Parker would not have purchased the Spring Valley glucosamine sulfate had she known that it contains no glucosamine sulfate.

10.    Plaintiff Reba Garth resides in Valrico, Florida. She purchased Spring Valley glucosamine sulfate at Wal-Mart stores located in Brandon, Florida on multiple occasions in 2016 for her own use. She suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of Defendant set forth in this Complaint. Plaintiff Reba Garth would not have purchased the Spring Valley glucosamine sulfate had she known that it contains no glucosamine sulfate.

11.    Plaintiff Margaret Herrin resides in Signal Mountain, Tennessee. She purchased Spring Valley glucosamine sulfate at Wal-Mart stores located in Chattanooga, Tennessee on numerous occasions from 2010 to 2017 for her own use. She suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of Defendant set forth in this Complaint. Plaintiff Margaret

Herrin would not have purchased the Spring Valley glucosamine sulfate had she known that it contains no glucosamine sulfate.

12.    Plaintiff Shirley Reinhard resides in Waukesha, Wisconsin. She purchased Spring Valley glucosamine sulfate at Wal-Mart stores located in Waukesha, Wisconsin on a near monthly basis from 2009 to 2017 for her own use. She suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of Defendant set forth in this Complaint. Plaintiff Shirley Reinhard would not have purchased the Spring Valley glucosamine sulfate had she known that it contains no glucosamine sulfate.

13.    Plaintiffs reasonably relied on labeling, marketing, or advertising in purchasing these supplements. At the time of purchase, Plaintiffs reasonably believed that the supplements contained glucosamine sulfate, that they did not include mislabeled ingredients and were otherwise legal dietary supplements.

14.    Had Plaintiffs known that the supplements they purchased contained mislabeled dietary ingredients or were unlawful dietary supplements, they would not have purchased them.

## **DEFENDANT**

15.    Defendant is a Delaware corporation with a principal place of business at 702 SW 8th Street, Bentonville, Arkansas 72716-8611. Defendant markets, distributes and sells the Wal-Mart Products throughout the United States, including

in Florida, Missouri, Tennessee and Wisconsin.

## FACTUAL ALLEGATIONS

### Dietary Supplements

16.     According to the Centers for Disease Control and Prevention, by 2006 over half of the United States population uses dietary supplements.[1] Consumers ingest these products to supplement their total dietary intake of substances such as vitamins, minerals, herbs, or botanicals. These supplements are often found in the form of tablets, capsules, softgels, gelcaps, liquids, or powders.

17.     Dietary supplements are marketed for a variety of reasons, including for weight loss, energy enhancement and for treatment of pain. The supplements at issue here are primarily marketed as pain supplements available as capsules.

### Federal and State Law Requirements for Dietary Supplements

18.     Federal and state laws place primary responsibility for the safety of dietary supplements, and for non-misleading labeling and advertising, on the shoulders of supplement manufacturers and distributors such as Defendant. State law provides an additional layer of consumer protection against false or misleading labeling, marketing, and advertising. As such, state law complements federal law, while also serving a distinct compensatory function.

---

[1] https://www.cdc.gov/nchs/data/databriefs/db61.htm (last visited December 12, 2017).

19.    The federal Food, Drug, and Cosmetic Act ("FDCA") defines a "dietary supplement" as a product (other than tobacco) intended to supplement the diet that bears or contains one or more of the following dietary ingredients: a vitamin; a mineral; an herb or other botanical; an amino acid; a dietary substance for use by man to supplement the diet by increasing the total dietary intake; or a concentrate, metabolite, constituent, extract, or a combination of any ingredient mentioned above. 21 U.S.C. § 321(ff). Dietary supplements are products which are intended for ingestion, which are not represented for use as a conventional food or as a sole item of a meal or diet, and which are labeled as dietary supplements. *Id.*

20.    A "dietary ingredient" under 21 U.S.C. § 201(ff)(1) is "(A) a vitamin; (B) a mineral; (C) an herb or other botanical; (D) an amino acid; (E) a dietary substance for use by man to supplement the diet by increasing the total dietary intake; or (F) a concentrate, metabolite, constituent, extract, or combination of any ingredient described in clause (A), (B), (C), (D), or (E)."

21.    According to the FDCA, dietary supplements like glucosamine are considered food. *Nutraceutical Corp. v. Crawford,* 364 F. Supp. 2d 1310, 1318-1319 (D. Utah 2005) (citing 21 U.S.C. § 321(ff)). "A brief look at the legislative history of the Dietary Supplement Health and Education Act ("DSHEA") [21 U.S.C. § 321] indicates that Congress generally intended to harmonize the treatment of dietary

supplements with that of foods when it added the dietary supplement section to the food adulteration provision." *Id.*

22.    "A food shall be deemed adulterated . . . (1) If any valuable constituent has been in whole or in part omitted or abstracted therefrom; or (2) if any substance has been substituted wholly or in part therefor; or (3) if damage or inferiority has been concealed in any manner; or (4) if any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight, or reduce its quality or strength, or make it appear better or of greater value than it is." 21 U.S.C. § 342(b).

23.    A food shall be deemed misbranded if (1) its labeling is false or misleading in any particular, 21 U.S.C. § 343(a)-(c), (j), (s), or (2) in the case of a food to which section 411 [21 U.S.C. § 350] applies, its advertising is false or misleading in a material respect or its labeling is in violation of § 411(b)(2) [21 U.S.C. § 350(b)(2)].

24.    The introduction or delivery for introduction into interstate commerce of any food, drug, devise, tobacco product, or cosmetic that is adulterated or misbranded is prohibited. 21 U.S.C. § 331.

25.    States have expressly adopted or incorporated a general prohibition against food labeling that is false or misleading in any particular, or against the sale of food which is adulterated, in their state Food, Drug, and Cosmetic Acts. These state statutes incorporate by reference relevant portions of the FDCA. Florida's Food

Safety Act, Fla. Stat. Ann. § 500.01, *et seq*.; Missouri's Food, Drugs and Cosmetics Act, Rev. Stat. Mo. § 196.010, *et seq*.; Tennessee's Food Drug and Cosmetics Act, T.C.A. § 53-1-101 *et seq.*; Wisconsin's Agriculture, Food and Trade Practices Act, Wis. Stat. § 97.01 *et seq*.

Glucosamine

26.    Glucosamine is an amino sugar that is produced naturally in humans. It is also found naturally in seashells, or it can be manufactured artificially in a laboratory. It is a natural constituent of glycosaminoglycans in cartilage and synovial fluid. When administered exogenously, it exerts pharmacological effects on osteoarthritic cartilage and chondrocytes. Glucosamine is not approved by the Food and Drug Administration ("FDA") for medical use in humans and is classified as a dietary supplement. People take glucosamine to treat symptoms of osteoarthritis, rheumatoid arthritis, glaucoma, temporomandibular disorder, joint pain, back pain, and weight loss.

Dietary Supplements Sold By Defendant As Glucosamine Sulfate

27.    Individual crystals from samples of Defendant's supplement labeled Glucosamine Sulfate were analyzed using Fourier-transform infrared spectroscopy (FT-IR). The results showed that each sample contained mixtures of glucosamine hydrochloride crystals and potassium sulfate crystals.

28.    These samples were mislabeled as containing glucosamine sulfate, a distinctly different chemical compound than glucosamine hydrochloride. None of the individual crystals that were analyzed showed the presence of glucosamine sulfate. Blending two different crystals in a dry form does not create crystals that contain all of the components together. The analyses showed that these components remained separate.

29.    Blending two different crystals in a dry form also does not cause the components of the crystals to swap with each other. Had this occurred glucosamine sulfate and potassium chloride would have been detected but neither were. While it is possible to chemically convert glucosamine hydrochloride to glucosamine sulfate, this was not done in the creation of Defendant's supplements. Labelling this supplement as glucosamine sulfate is chemically inaccurate and misleading.

30.    Plaintiffs payed $8.88 for bottles of 120 tablets or $11.48 for bottles of 200 tablets of the supplement labeled as containing Glucosamine Sulfate. However, none of them would have paid that amount had they known the supplement did not contain Glucosamine Sulfate as labeled.

**The Following Products Contain *Only* Glucosamine Hydrochloride and Potassium Sulfate**











## CLASS ACTION ALLEGATIONS

31.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs

bring this action on behalf of themselves and proposed class and subclasses initially

defined as:

Nationwide Class:

*All persons in the United States who purchased a dietary supplement labeled Glucosamine Sulfate but instead containing Glucosamine Hydrochloride from Defendant other than for purposes of resale.*

Florida Sub-Class:

*All persons in Florida who purchased a dietary supplement labeled Glucosamine Sulfate but instead containing Glucosamine Hydrochloride from Defendant other than for purposes of resale.*

Missouri Sub-Class:

*All persons in Missouri who purchased a dietary supplement labeled Glucosamine Sulfate but instead containing Glucosamine Hydrochloride from Defendant other than for purposes of resale.*

Tennessee Sub-Class:

*All persons in Tennessee who purchased a dietary supplement labeled Glucosamine Sulfate but instead containing Glucosamine Hydrochloride from Defendant other than for purposes of resale.*

Wisconsin Sub-Class:

*All persons in Wisconsin who purchased a dietary supplement labeled Glucosamine Sulfate but instead containing Glucosamine Hydrochloride from Defendant other than for purposes of resale.*

32.     Excluded from the proposed class and subclasses are Defendant, any parent, affiliate, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any of Defendant's officers or directors; any successor or assign of Defendant; anyone employed by counsel for Plaintiffs; any Judge to whom this case is assigned, his or her spouse, and all persons within a third degree of relationship to either of them.

33.     <u>Numerosity of the Classes – Fed. R. Civ. P. 23(a)(1)</u>. The members of the class are so numerous that joinder of all members is impracticable. While the exact number of class members is unknown to Plaintiffs at the present time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are tens of thousands of class members located throughout the United States and thousands in each of the sub-class states. It would be impracticable to join the class members individually. These members are readily ascertainable, including through sales receipts.

34.     <u>Existence and Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3)</u>. Common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members. These common questions include whether:

a.    Defendant sold dietary supplements which contained only Glucosamine Hydrochloride and Potassium Sulfate but were mislabeled as containing Glucosamine Sulfate;

b.    Defendant misrepresented that their Glucosamine dietary supplements were Glucosamine Sulfate when the supplements were only Glucosamine Hydrochloride and Potassium Sulfate;

c.    Defendant's representations regarding their Glucosamine dietary supplements were otherwise false or deceptive;

d.    Defendant knew, or in the exercise of reasonable diligence should have known, that its representations regarding the Glucosamine dietary supplements it sold were false or deceptive;

e.    Defendant's misrepresentations regarding its Glucosamine dietary supplements would deceive reasonable consumers;

f.    Defendant's misrepresentations regarding its Glucosamine dietary supplements constitute unfair, deceptive, untrue, or misleading advertising;

g.    Defendant violated the consumer protection laws of Florida, Missouri, and Wisconsin.

h. Defendant violated Florida's Food Safety Act, Fla. Stat. Ann. § 500.01, *et seq*.; Missouri's Food, Drugs and Cosmetics Act, Rev. Stat. Mo. § 196.010, *et seq*.; Tennessee's Food, Drugs and Cosmetics Act, Tenn. Code Ann. § 53-1-101 *et seq*.; and Wisconsin's Agriculture, Food and Trade Practices Act, Wis. Stat. § 97.01 *et seq*. by selling dietary supplements with false or misleading labeling in any particular or adulterated ingredients;

i. Defendant's conduct described above caused Plaintiffs and class members to suffer injury, and they therefore may recover damages, or other legal and equitable relief, and an award of attorneys' fees, costs, and expenses.

35. <u>Typicality – Fed. R. Civ. P. 23(a)(3)</u>. Plaintiffs' claims are typical of the claims of the class because, among other things, they purchased one of the affected supplements due to Defendant's representations and lost money as a result.

36. <u>Adequacy of Representation – Fed. R. Civ. P. 23(a)(4)</u>. Plaintiffs are adequate representatives because their interests are aligned with those of the class members they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously on class members' behalf.

37.    <u>Superiority – Fed. R. Civ. P. 23(b)(3)</u>. The action may be certified under Rule 23(b)(3) because common questions predominate as described above and because a class action is the best available method for the fair and efficient adjudication of this controversy. This litigation involves technical issues and targeted discovery of a sophisticated defendant, and could not practically be taken on by individual litigants. In addition, individual litigation of class members' claims would be impracticable and unduly burdensome to the court system and has the potential to lead to inconsistent results. A class action presents fewer management problems and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

38.    In the alternative to class certification under Rule 23(b)(3), the proposed class may be certified under 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class.

**FIRST CAUSE OF ACTION**
**Violations of the Magnuson-Moss Warranty Act ("MMWA"),**
**15 U.S.C. § 2301, *et seq*., for Breach of Implied Warranties**
**(All Plaintiffs, Individually and on behalf of the Nationwide Class**
**and State Sub-Classes)**

39.    Plaintiffs, on behalf of themselves and the proposed nationwide class, reallege as if fully set forth, paragraphs 1 through 38 as set forth above.

40.     The Defendant's dietary supplements are consumer products as defined in 15 U.S.C. § 2301(1).

41.     Plaintiffs and members of the nationwide class are "consumers" as defined in 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

42.     Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

43.     Under 15 U.S.C. § 2310(d)(1), the MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

44.     In connection with its sale of the dietary supplements, Defendant gave an implied warranty of merchantability as defined in 15 U.S.C. § 2301(7). Specifically, Defendant warranted that the dietary supplements were fit for their ordinary purpose, to supplement the diet with particular dietary ingredients, and would pass without objection in the trade.

45.     Defendant breached the implied warranty of merchantability, violating the MMWA by selling dietary supplements labeled as containing Glucosamine Sulfate that that contained only Glucosamine Hydrochloride to consumers, including Plaintiffs and the nationwide class.

46.    Defendant's breach of warranty deprived Plaintiffs and the nationwide class of the benefit of their bargain.

47.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the nationwide class suffered and continue to suffer damages and other losses in an amount to be determined at trial.

48.    Plaintiffs and the members of the nationwide class had sufficient direct dealings with either Defendant or its agents to establish privity of contract. Nonetheless, privity is not required here because Plaintiffs and the members of the nationwide class are the intended third-party beneficiaries of the implied warranties between Defendant and its third-party manufacturers. Defendant's warranties were intended to benefit Plaintiffs and the members of the nationwide class.

49.    Privity also is not required because the dietary supplements are dangerous instrumentalities due to the nonconformities outlined herein.

50.    As a direct and proximate result of the foregoing acts and/or omissions, Plaintiffs and the classes suffered damages, and are entitled to compensatory damages, costs and reasonable attorneys' fees.

### SECOND CAUSE OF ACTION
**Breach of Implied Warranties**
**(All Plaintiffs, Individually and on behalf of the Nationwide Class and State Sub-Classes)**

51.    Plaintiffs, on behalf of themselves and the proposed nationwide and sate classes, reallege as if fully set forth, paragraphs 1 through 38 as set forth above.

52.    Defendant is in the business of selling dietary supplements to consumers such as Plaintiffs and members of the classes, including, but not limited to, dietary supplements labeled as Glucosamine Sulfate of the kind sold to Plaintiffs and members of the proposed statewide classes.

53.    Plaintiffs and members of the classes purchased one of more supplements labeled with Glucosamine Sulfate.

54.    At all times herein mentioned, Defendant manufactured, tested, advertised, promoted, marketed, sold and/or distributed these dietary supplements.

55.    At the time Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the dietary supplements for use by Plaintiffs and the class members, it knew of the uses for which the dietary supplements were intended, and impliedly warranted the supplements to be of merchantable quality.

56.    Defendant's representations and warranties were false, misleading, and inaccurate, in that the dietary supplements were not of merchantable quality because the products were mislabeled, would not pass without objection in the trade, were not fit for ordinary purposes, and did not conform to the promises on the labeling.

57.    Plaintiffs and the classes relied on the implied warranty of merchantability.

58.     Plaintiffs and the classes reasonably relied upon the skill and judgment of Defendant as to whether the dietary supplements were of merchantable quality.

59.     The dietary supplements introduced into the stream of commerce by Defendant were expected to and reached consumers, users, and persons coming into contact with them without substantial change in the condition in which they were at the time they were sold.

60.     Defendant breached the implied warranty of merchantability, because the supplements could not deliver on the advertised claims, would not pass without objection in the trade, and were not fit for ordinary purposes.

61.     As a direct and proximate result of the breach of implied warranties, Plaintiffs and the members of the proposed classes suffered and/or will continue to be harmed and suffer economic loss.

62.     Defendant's conduct breached its implied warranties regarding its supplements under State implied warranty laws including:

    a.      Fla. Stat. § 672.314 and § 672.315;

    b.      Rev. Stat. Mo., § 400.2-314 and § 400.2-315;

    c.      Tenn. Code Ann. § 47-2-314 and § 47-2-315; and

    d.      Wis. Stat. § 402.314 and § 402.315.

63.     As a direct and proximate result of the foregoing acts and/or omissions, Plaintiffs and the classes suffered damages, and are entitled to compensatory damages, costs and reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
**Unjust Enrichment or Quasi-Contract**
**(All Plaintiffs, Individually and on behalf of behalf of the Nationwide Class and State Sub-Classes)**

64.     Plaintiffs, on behalf of themselves and the proposed nationwide and state classes, reallege as if fully set forth, paragraphs 1 through 38 as set forth above.

65.     Defendant has unjustly retained a benefit to the detriment of Plaintiffs and the members of the proposed classes. Defendant sold dietary supplements to Plaintiffs and class members that were mislabeled as containing Glucosamine Sulfate when in reality they contained only Glucosamine Hydrochloride. Defendant received and continues to possess money paid by Plaintiffs and the classes to which it was and is not entitled.

66.     Defendant's retention of this benefit violates the fundamental principles of justice, equity, and good conscience. Through its control of labelling and sale of mislabeled dietary supplements to consumers, Defendant misrepresented that its dietary supplements and the ingredients contained within were something other than they really were.

67.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the classes suffered damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### Negligent Misrepresentation
### (All Plaintiffs, Individually and on behalf of the Nationwide Class
### and State Sub-Classes)

68.    Plaintiffs, on behalf of themselves and the proposed nationwide and state classes, reallege as if fully set forth, paragraphs 1 through 38 as set forth above.

69.    Defendant had a duty to disclose to Plaintiffs and the classes the supplement's actual ingredients, quality and characteristics.

70.    Defendant negligently misrepresented, omitted and concealed from consumers material facts relating to the ingredients, quality and characteristics of its supplements, including that they contained Glucosamine Hydrochloride rather than Glucosamine Sulfate.

71.    These misrepresentations and omissions were material and concerned the specific characteristics and quality of its supplements that reasonable consumers would consider in purchasing any dietary supplement.

72.    Defendant made such false and misleading statements and omissions on its website and supplement labeling, and in its advertisements and warranties, with the intention of inducing Plaintiffs and the Class members to purchase the supplements.

73.    Defendant was under a duty to disclose facts necessary to correct its misstatements. Further, Defendant was in a better position to discover the

misrepresentations than Plaintiffs because it controlled the supplement's design, manufacturing, testing, labelling and marketing processes.

74.    At the time it made the representations, Defendant knew, or by the exercise of reasonable care should have known, that the statements were false.

75.    Defendant advertised and marketed its supplements with the intent to induce Plaintiffs and class members to purchase them.

76.    Defendant knew or should have known that without the misrepresentations and/or omissions, Plaintiffs and the members of the classes would not have purchased the supplements.

77.    Plaintiffs and the class members justifiably relied upon Defendant's misrepresentations about the supplement's quality and characteristics.

78.    Plaintiffs and the class members were unaware of the falsity of Defendant's representations and omissions and, as a result, justifiably relied on them in deciding to purchase the dietary supplements. Had Plaintiffs and class members been aware of the true nature and quality of the dietary supplement, they would not have purchased it.

79.    As a direct and proximate result of Defendant's misrepresentations and omissions of material fact, Plaintiffs and class members suffered and will continue to suffer damages and losses as alleged herein in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**Violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"),**

26

**Fla. Stat. § 501.201,** *et seq.*
**(Plaintiff Reba Garth, Individually and on behalf of the**
**proposed Florida Sub-Class)**

80.    Plaintiffs, on behalf of themselves and the proposed Florida class, reallege as if fully set forth, paragraphs 1 through 38 as set forth above.

81.    The FDUTPA makes unlawful any "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Defendant has violated and continues to violate the FDUTPA.

82.    Defendant engaged in "deceptive" trade practices, as identified in Fla. Stat. §§ 501.203, and 501.204 by:

    a.    Representing that its supplements containing Glucosamine had characteristics that they did not have;

    b.    Representing that its supplements containing Glucosamine were of a particular standard, quality, or grade when they were actually of another;

    c.    Failing to disclose that its supplements contained Glucosamine Hydrochloride; and

    d.    Advertising the supplements as containing Glucosamine Sulfate when it knew they did not.

83.    Defendant knew or should have known, from its internal product knowledge, research, and available scientific literature, that Glucosamine

Hydrochloride was not an equivalent dietary ingredient to Glucosamine Sulfate. Nonetheless, it falsely listed, or sold supplements that it knew falsely listed, Glucosamine Sulfate and/or Glucosamine Sulfate Potassium Chloride as a dietary ingredient on various supplements and/or misrepresented Glucosamine Hydrochloride as Glucosamine Sulfate and/or omitted Glucosamine Hydrochloride on the labels altogether.

84.    Reasonable consumers such as Plaintiff Garth and members of the Florida sub-class, would consider the misrepresentations and omissions as to the ingredients and quality of a supplements material to their purchasing decisions.

85.    Plaintiff and members of the Florida sub-class justifiably relied on Defendant's representations and omissions regarding the composition of its supplements.

86.    Defendant's conduct was deceptive in that it violated the prohibition against false or misleading labeling in the Florida's Food Safety Act, Fla. Stat. § 500.01, *et seq.*, and the Fla. Admin. Code. r. 5K-4.002.

87.    As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Florida sub-class were harmed because they purchased supplements that they would not have bought, or otherwise paid a premium price for them.

88.    Plaintiff and the Florida sub-class are entitled to actual damages, costs, reasonable attorneys' fees and costs, a declaratory judgment that Defendant's

conduct violates the FDUPTA, and an injunction precluding Defendant from engaging in conduct that continues to violate the FDUTPA.

## SIXTH CAUSE OF ACTION
**Violations of Missouri's Merchandising Practices Act ("MMPA"),**
**Mo. Rev. Stat. § 407.020, *et seq*.**
**(Plaintiff Cynthia Parker, Individually and on behalf of the proposed**
**Missouri Sub-Class)**

89.     Plaintiffs, on behalf of themselves and the proposed Missouri class, reallege as if fully set forth, paragraphs 1 through 38 as set forth above.

90.     The MMPA makes unlawful "any deception, fraud . . . false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in the connection with the sale or advertisement of any merchandise trade or commerce." Defendant has violated and continues to violate the MMPA.

91.     Defendant engaged in "deceptive" trade practices, as identified in Mo. Rev. Stat. § 407.020, and 15 C.S.R. 60-9.010 – 60-9.110 by:

    a.    Creating the false impression that its dietary supplements contained Glucosamine Sulfate rather than Glucosamine Hydrochloride;

    b.    Asserting the supplement contained Glucosamine Sulfate when that assertion was not in accord with the facts;

    c.    Employing a format in its advertisement or sales presentation of its supplement which, because of its overall appearance, has the tendency or capacity to mislead consumers into believing the

supplement contained Glucosamine Sulfate rather than Glucosamine Hydrochloride.

d.  Omitting that its supplements contain Glucosamine Hydrochloride; and

e.  Advertising that its supplements contain Glucosamine Sulfate when it knew they did not.

92.  Defendant knew or should have known, from its internal product knowledge, research, and available scientific literature, that Glucosamine Hydrochloride was not an equivalent dietary ingredient to Glucosamine Sulfate. Nonetheless, it falsely listed, or sold supplements that it knew falsely listed, Glucosamine Sulfate and/or Glucosamine Sulfate Potassium Chloride as a dietary ingredient on various supplements and/or misrepresented Glucosamine Hydrochloride as Glucosamine Sulfate and/or omitted Glucosamine Hydrochloride on the labels altogether.

93.  Reasonable consumers such as Plaintiff Parker and members of the Missouri sub-class, would consider the misrepresentations and omissions as to the ingredients and quality of a supplements material to their purchasing decisions.

94.  Plaintiff and members of the Missouri sub-class justifiably relied on Defendant's representations and omissions regarding the composition of its supplements.

95.     Defendant's conduct was also deceptive in that it violated the prohibition against false or misleading labeling in the Missouri's Food, Drug and Cosmetics Act, Mo. Rev. Stat. § 196.010, *et seq*.

96.     As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Missouri sub-class were harmed because they purchased supplements that they would not have bought, or otherwise paid a premium price for them.

97.     Plaintiff and the Missouri sub-class are entitled to actual damages, costs, reasonable attorneys' fees and costs, a declaratory judgment that Defendant's conduct violates the MMPA, and an injunction precluding Defendant from engaging in conduct that continues to violate the MMPA.

### SEVENTH CAUSE OF ACTION
**Violations of Wisc. Stat. Ann. § 100.20, *et seq*. and Wis. Adm. Code ATCP § 90.10 (Plaintiff Shirley Reinhard, Individually and on behalf of the proposed Wisconsin Sub-Class)**

98.     Plaintiffs, on behalf of themselves and the proposed Wisconsin class, reallege as if fully set forth, paragraphs 1 through 38 as set forth above.

99.     Wisconsin law prohibits any "unfair trade practices in business." By engaging in unfair trade practices Defendant has violated and continues to violate Wisconsin law.

100.    Defendant engaged in "unfair" trade practices, as identified in Wisc. Stat. Ann. §§ 100.20 and Wis. Adm. Code ATCP 90.10 by:

a.   Labeling its supplement as containing Glucosamine Sulfate, which was a misleading representation with respect to the presence of only Glucosamine Hydrochloride in the supplement; and

b.   By labeling its supplement as including the ingredient Glucosamine Sulfate/Potassium Chloride when it contained only Glucosamine Hydrochloride and Potassium Sulfate;

101.   Defendant knew or should have known, from its internal product knowledge, research, and available scientific literature, that Glucosamine Hydrochloride was not an equivalent dietary ingredient to Glucosamine Sulfate. Nonetheless, it falsely listed, or sold supplements that it knew falsely listed, Glucosamine Sulfate and/or Glucosamine Sulfate Potassium Chloride as a dietary ingredient on various supplements and/or misrepresented Glucosamine Hydrochloride as Glucosamine Sulfate and/or omitted Glucosamine Hydrochloride on the labels altogether.

102.   Reasonable consumers such as Plaintiff Reinhard and members of the Wisconsin sub-class, would consider the misrepresentations and omissions as to the ingredients and quality of a supplements material to their purchasing decisions.

103.    Plaintiff and members of the Wisconsin sub-class justifiably relied on Defendant's representations and omissions regarding the composition of its supplements.

104.    As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Wisconsin sub-class were harmed and suffered pecuniary losses because they purchased supplements that they would not have bought, or otherwise paid a premium price for them.

105.    Plaintiff and the Wisconsin Sub-Class are entitled to actual damages including double their pecuniary losses, costs, reasonable attorneys' fees and costs, a declaratory judgment that Defendant's aforementioned conduct violates Wisconsin law, and an injunction precluding Defendant from engaging in conduct that continues to violate Wisconsin law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the nationwide class and State sub-classes, respectfully request that this Court:

a.    Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Classes as defined above;

b.    Appoint Plaintiffs as the representatives of the Classes;

c.  Award all actual, general, special, incidental, pecuniary, statutory, punitive, and consequential damages and restitution to which Plaintiffs and the class members are entitled;

d.  Award pre-judgment and post-judgment interest on such monetary relief;

e.  Grant appropriate injunctive and declaratory relief, including, without limitation, an order that requires Defendant to recall dietary supplements containing Glucosamine Hydrochloride and to provide Plaintiffs and class members with appropriate curative notice regarding the existence and cause of the supplements' noncompliance with federal and state laws;

f.  Award reasonable attorneys' fees and costs; and

g.  Grant such further relief that this Court deems appropriate.

Respectfully submitted,

*/s/ Eric S. Johnson*
Eric S. Johnson, # 61680
Paul J. Hanly, Jr. (*pro hac vice* forthcoming)
Mitchell M. Breit (*pro hac vice* forthcoming)
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue
New York, New York 10016-7416
Telephone: (212) 784-6400
Facsimile: (212) 213-5949
ejohnson@simmonsfirm.com
phanly@simmonsfirm.com
mbreit@simmonsfirm.com

Gregory F. Coleman (*pro hac vice* to be submitted)
Mark E. Silvey (*pro hac vice* to be submitted)
Adam A. Edwards (*pro hac vice* to be submitted)
Lisa A. White (*pro hac vice* to be submitted)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
Facsimile: (865) 533-0049
[greg@gregcolemanlaw.com](mailto:greg@gregcolemanlaw.com)

**Attorneys for the Plaintiffs**