**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

CYNTHIA PARKER, *et al.,*

    *Plaintiff,*

  v.

WAL-MART STORES, INC.,

    *Defendant.*

Civil Action No. 4:18-cv-00465-JAR

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
<u>WALMART INC.'S MOTION TO DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................... 1

LEGAL STANDARD ............................................................................................... 3

ARGUMENT .......................................................................................................... 4

**I.   WALMART'S PREEMPTION ARGUMENT IS PROCEDURALLY PREMATURE AND SUBSTANTIVELY FLAWED.** ....................................................................................................... 4

   A.   Walmart's Preemption Position is Inappropriate for Consideration on a Motion to Dismiss. ...................................................................................................... 4

   B.   Plaintiffs are Not Required To Prove Defendant's Mislabeling By Using the § 101.9(g)(2) 12 Sample Set Methodology. ............................................................. 7

   C.   Requiring Pre-Suit Compliance with § 101.9(g)(2) Would Effectively Immunize Defendant From Actions Based on Inaccuracies in Its Labeling. ................................ 8

**II.   PLAINTIFFS' CLAIMS FOR BREACH OF THE IMPLIED WARRANTY SHOULD NOT BE DISMISSED.** .. 9

**III.  PLAINTIFFS' CLAIM FOR VIOLATION OF THE MAGNUSSON-MOSS WARRANTY ACT ("MMWA") (COUNT II) SHOULD NOT BE DISMISSED.** ............................................................. 11

**IV.   PLAINTIFF GARTH'S UNJUST ENRICHMENT CLAIM IS NOT REDUNDANT AND MAY BE PLED AS AN ALTERNATIVE CLAIM FOR RELIEF.** ................................................................. 12

**V.   PLAINTIFFS HAVE STANDING TO PURSUE INJUNCTIVE AND DECLARATORY RELIEF.** ............... 13

   A.   Plaintiffs Have Sufficiently Alleged Standing. .................................................... 13

   B.   Plaintiffs May Assert Alternative Remedies. ...................................................... 15

CONCLUSION ...................................................................................................... 15

## TABLE OF AUTHORITIES

### Cases

*Aero. Precision, Inc. v. NexGen Aero, Ltd. Liab. Co*., No. 17-CV-61106-WPD, 2017 U.S. Dist. LEXIS 159888 (S.D. Fla. Sep. 27, 2017) ........................................................................ 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 6

*Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585 (8th Cir. 2009) ............................................ 4, 5

*Bratton v. Hershey Co*., No. 2:16-cv-4322-C-NKL, 2017 U.S. Dist. LEXIS 74508 (W.D. Mo. May 16, 2017) ..................................................................................................................... 14

*Chester v. TJX Companies, Inc*., 2016 U.S. Dist. LEXIS 110342 (C.D. Cal. Aug. 18, 2016) ........................................................................................................................................ 14

*Clay v. Cytosport, Inc*., No. 15-CV-165 L DHB, 2015 WL 5007884 (S.D. Cal. Aug. 19, 2015) ..................................................................................................................................... 5, 6

*Daigle v. Ford Motor Co*., 713 F. Supp. 2d 822 (D. Minn. 2010) ............................................ 15

*Gage v. Brennan*, No. 4:17-CV-2872 CAS, 2018 WL 3105418 (E.D. Mo. June 25, 2018) .......... 3

*Gubala v. CVS Pharmacy, Inc.,* No. 14 C 9039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016) ...................................................................................................................................... 6, 8

*Gubala v. HBS Int'l Corp*., No. 14 C 9299, 2016 WL 2344583 (N.D. Ill. May 4, 2016) .............. 6

*Guerrero v. Target*, 889 F. Supp. 2d 1348 (S.D. Fla. 2012) ................................................ 12, 13

*Hawkins v. Nestle U.S.A., Inc*., No. 4:17CV205 HEA, 2018 U.S. Dist. LEXIS 19933 (E.D. Mo. Feb. 7, 2018) ........................................................................................................ 13, 14

*Hose v. Henry Indus., Inc*., No. 4:15-CV-01913-JAR, 2017 WL 386545 (E.D. Mo. Jan. 27, 2017) .................................................................................................................................... 3

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig*., 955 F. Supp. 2d 1311 (S.D. Fla. 2013) ..................................................................................................... 13

*In re Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg. & Sales Practice Litig*., No. 1:16md2743 (AJT/TRJ), 2017 U.S. Dist. LEXIS 105335 (E.D. Va. July 7, 2017) ............................................................................................................................. 12

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig*., 880 F. Supp. 2d 801 (S.D. Ohio 2012) .............................................................................................................. 11

*Johnson v. Johnson & Johnson (In re Levaquin Prods. Liab. Litig.)*, 752 F. Supp. 2d 1071 (D. Minn. 2010) ........................................................................................................................ 15

*Jovine v. Abbott Labs., Inc*., 795 F. Supp. 2d 1331 (S.D. Fla. 2011) ........................................ 12

*L.L. Nelson Enters., Inc. v. Cty. of St. Louis*, 673 F.3d 799 (8th Cir. 2012) ................................ 3

*Manier v. L'Oreal U.S.A., Inc. (In re Amla Litig.)*, No. 16-cv-6593 (JSR), 2017 U.S. Dist. LEXIS 116139 (S.D.N.Y. July 17, 2017) ................................................................................ 11

*Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 WL 5234596 (N.D. Ill. Sept. 22, 2016) ...................... 6

*Osborn v. United States*, 918 F.2d 724 (8th Cir. 1990) ................................................................ 4

*Penrose v. Buffalo Trace Distillery, Inc.*, No. 4:17CV294 HEA, 2018 U.S. Dist. LEXIS
    18340 (E.D. Mo. Feb. 5, 2018) ........................................................................................ 10, 12

*Podpeskar v. Makita U.S.A. Inc.*, 247 F. Supp. 3d 1001 (D. Minn. 2017) ................................. 15

*Reilly v. Amy's Kitchen, Inc.*, No. 13-CV-21525, 2013 U.S. Dist. LEXIS 188683, 2013
    WL 9638985 (S.D. Fla. Dec. 9, 2013) .................................................................................... 13

*Reitz v. Nationstar Mortgage, LLC*, 954 F. Supp. 2d 870 (E.D. Mo. 2013) ................................. 3

*Russian Media Grp., LLC v. Cable Am. Inc.*, 598 F.3d 302 (7th Cir. 2010) ................................ 8

*Schindler v. James Hardie Bldg. Prods. (In re Hardieplank Fiber Cement Siding Litig.)*,
    No. 12-md-2359, 2014 U.S. Dist. LEXIS 89113 (D. Minn. June 30, 2014) .......................... 15

*Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145 (Mo. Ct. App. 2006), *overruled
    on other grounds, Badahman v. Catering St. Louis*, 395 S.W.3d 29 (Mo. 2013) ................... 11

*Smith v. Allmax Nutrition, Inc.*, No. 1:15-CV-00744-SAB, 2015 WL 9434768 (E.D. Cal.
    Dec. 24, 2015) .......................................................................................................................... 5

*Smith v. Green*, No. 1:17-CV-154 CAS, 2018 WL 3036461 (E.D. Mo. June 19, 2018) ............... 3

*State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714
    (11th Cir. 2011) ................................................................................................................. 12, 13

*Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 U.S. Dist.
    LEXIS 126880 (E.D.N.Y. Sep. 22, 2015) ......................................................................... 12, 13

*Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008) ................................................................ 6

*Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617 (8th Cir. 2012) ....................................... 4

*Ulrich v. Pope Cty.*, 715 F.3d 1054 (8th Cir. 2013) ..................................................................... 3

*Webb v. Dr. Pepper Snapple Grp., Inc.*, No. 4:17-00624-CV-RK, 2018 U.S. Dist. LEXIS
    71270 (W.D. Mo. Apr. 25, 2018) ........................................................................................... 14

## Statutes

Florida Deceptive and Unfair Trade Practices Act ........................................................................ 2

Food, Drug, and Cosmetic Act ................................................................................................... 1, 5

Magnuson-Moss Warranty Act ...................................................................................................... 2

## Other Authorities

*Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of
    Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol
    Content of Food*, 58 FR 2302-01 ............................................................................................. 8

*Guidance For Industry FDA Nutrition Labeling Manual -- A Guide For Developing and
    Using Data Bases*, 1998 WL 34327548 (Mar. 1998) ................................................................ 8

## Rules

21 C.F.R. § 101.9(g) ................................................................... 4, 5, 6, 7

21 C.F.R. § 101.9(g)(2) .............................................................. 4, 6, 8, 9

21 C.F.R. § 101.9(g)(9) .................................................................... 7

21 C.F.R. 101.9(g)(1)-(6) ................................................................. 9

21 U.S.C. § 372 ............................................................................. 9

21 U.S.C. § 372(a)(1) ..................................................................... 9

21 U.S.C. § 374 ............................................................................. 9

21. C.F.R. § 101.13(o) .................................................................... 7

21. C.F.R. § 101.9 ......................................................................... 7

28 U.S.C. § 374(c) ......................................................................... 9

Fed. R. Civ. P. 12(b)(1) .............................................................. 1, 4

Fed. R. Civ. P. 12(b)(6) ........................................................... 1, 3, 4

Fed. R. Civ. P. 8 ...................................................................... 5, 7, 15

Plaintiffs submit this opposition to Defendant's Motion to Dismiss the Complaint (Dkt. No. 11) because dismissal is unwarranted under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). Defendant Walmart's preemption argument is premature, and Plaintiffs' claims are not preempted by federal law in any event. Plaintiffs adequately pleaded their claims and they have standing to pursue their request for declaratory and injunctive relief. Therefore, Walmart's motion to dismiss should be denied.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs brought this class action suit against Walmart because Walmart's dietary supplements were mislabeled and misrepresented in violation of federal and state law. Complaint ("Compl.") ¶¶ 1-2, ECF No. 1. Walmart's glucosamine supplements are labeled as containing an ingredient known as glucosamine sulfate – a compound shown to reduce the pain of osteoarthritis that can be as effective as Tylenol and some nonsteroidal anti-inflammatory drugs. *Id*. ¶¶ 2-3. But Walmart's supplements do not actually contain glucosamine sulfate, instead they contain glucosamine hydrochloride and potassium sulfate – less expensive ingredients with no proven efficacy in addressing joint pain. *Id*. ¶ 2. Consumers were duped by this mislabeling and misrepresentation of ingredients and Walmart was unjustly enriched, in addition to violating consumer protection laws, breaching warranties, and engaging in negligent misrepresentation. *Id*. ¶¶ 4, 6.

Through its motion to dismiss, Walmart now seeks to avoid responsibility for its wrongful conduct by arguing that the Food, Drug, and Cosmetic Act ("FDCA") requires Plaintiffs to meet an unreasonable threshold before filing any claim in this suit and attacking several individual causes of actions for various reasons. These arguments cannot save Walmart from answering for its deceptive conduct. Each of Walmart's arguments fails.

Walmart's FDCA preemption argument is both premature and substantively flawed. Walmart's position would require Plaintiffs to perform *pre-suit* tests on (1) a composite sample of Walmart's dietary supplements comprised of twelve units, (2) taken from twelve different

randomly chosen shipping cases representative of a single lot, or ten percent of a single lot, (3) that is analyzed using AOAC methods when available. This defies common sense. This sample testing methodology is what is required for Food and Drug Administration ("FDA") enforcement actions and should not be a threshold pleading requirement for civil damages claims brought in federal court. In these types of cases, plaintiffs do not have access to composite samples comprised of twelve units before filing suit and engaging in discovery with defendants. Nor would plaintiffs be able to verify that their samples were from twelve different shipping cases. And defendants surely would not be willing to voluntarily provide numerous samples of their product to plaintiffs in order for those tests to be conducted before suit has been filed. Thus, imposing the rigorous FDA enforcement testing methodology before the filing of a civil complaint and without discovery would effectively deny plaintiffs access to the judicial system for wrongs caused by mislabeled products. The Court should reject Walmart's argument.

Walmart's attacks on the individual causes of action should also be denied.[1] First, Plaintiffs' claim for breach of implied warranty for merchantability should not be dismissed because Plaintiffs sufficiently allege that Walmart's dietary supplements are not fit for their ordinary purpose of reducing pain for osteoarthritis since the ingredients actually used (as opposed to the one advertised on the label) have no proven efficacy to reduce pain caused by osteoarthritis. Second, Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claim is viable because plaintiffs are not required to provide defendants an opportunity to cure breaches of warranties prior to suit when they bring suit as a class action. Third, Plaintiff Garth's unjust enrichment claim and Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim are not redundant. Even if they were, under Florida law unjust enrichment claims are available notwithstanding the existence of adequate legal remedies, such as those that may be available under a FDUTPA claim. Fourth, Walmart's argument that Plaintiffs do not have standing to seek

---

[1] Plaintiffs recognize the issues regarding pre-suit notice for their implied warranty claims under Missouri and Florida law and concede these two specific claims.

declaratory and injunctive relief because they do not allege that they will be injured in the future fails for want of common sense. The Eastern District of Missouri has explicitly rejected this argument. For these reasons, as explained in more detail below, Walmart's motion to dismiss should be denied.

## LEGAL STANDARD

A court must deny a Rule 12(b)(6) motion if the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). In evaluating a motion to dismiss, a court must "liberally construe the complaint in a light most favorable to the plaintiff." *Gage v. Brennan*, No. 4:17-CV-2872 CAS, 2018 WL 3105418, at *3 (E.D. Mo. June 25, 2018). This means that "all reasonable inferences from the complaint must be drawn in favor of the [plaintiff]" and a court must "accept[] as true all of the factual allegations contained in the complaint, even if it appears that actual proof of those facts is improbable." *Smith v. Green*, No. 1:17-CV-154 CAS, 2018 WL 3036461, at *1 (E.D. Mo. June 19, 2018). To survive a Rule 12(b)(6) motion, a complaint does not need detailed factual allegations. *See Reitz v. Nationstar Mortgage, LLC*, 954 F. Supp. 2d 870, 875 (E.D. Mo. 2013). Indeed, "specific facts are not necessary;" the complaint need only provide "fair notice of what the ... claim is and the grounds upon which it rests." *L.L. Nelson Enters., Inc. v. Cty. of St. Louis*, 673 F.3d 799, 805 (8th Cir. 2012) (citation omitted). "[D]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of h[er] claim which would entitle h[er] to relief." *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1058 (8th Cir. 2013) (citation omitted).

The issue of preemption is not always appropriately decided at the motion to dismiss stage. *See e.g.*, *Hose v. Henry Indus., Inc.*, No. 4:15-CV-01913-JAR, 2017 WL 386545, at *4–5 (E.D. Mo. Jan. 27, 2017). In fact, a preemption analysis is premature on a motion to dismiss where it involves facts within the sole possession of the defendant, requires facts a plaintiff cannot know or allege in the pleadings before discovery has been conducted, would require a court to decide a factual dispute between the parties, or would force a court to make assumptions

about facts not yet known. *Id.*; *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 & 598 (8th Cir. 2009).

Defendants assert a *facial* challenge under Rule 12(b)(1) as to whether Plaintiffs have standing to pursue declaratory and injunctive relief. Walmart Inc.'s Memorandum of Law in Support of Its Motion to Dismiss the Complaint ("Def. Br.") 7, ECF No. 12. The Court is thus restricted "to the face of the pleadings" and Plaintiffs are entitled to "the same protections" applicable under Rule 12(b)(6). *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990); *see also Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 621 (8th Cir. 2012).

## ARGUMENT

## I.   WALMART'S PREEMPTION ARGUMENT IS PROCEDURALLY PREMATURE AND SUBSTANTIVELY FLAWED.

Walmart's core argument for the dismissal of Plaintiffs' complaint is that the sample testing methodology used by FDA in its enforcement actions is not only applicable to Plaintiffs' class claims, but a mandatory, pre-suit requirement. Both of these contentions are incorrect. First, there is no logical basis for the Court to find that Plaintiffs are required to demonstrate pre-suit conformity with the FDA's testing methodology in order to properly plead class claims for mislabeling. Second, even if the Court disagrees with Plaintiffs, they would still be entitled to discovery from Walmart on the issue of 21 C.F.R. § 101.9(g)(2)-compliant testing prior to dismissal. If Plaintiffs are bound to utilize the FDA's testing protocol in order to properly plead their claims, then the Court should permit them to comply with the regulations in the same manner as the FDA would be permitted to proceed: by requiring Walmart to produce samples of its product per § 101.9(g) for Plaintiffs to test for compliance.

### A.   Walmart's Preemption Position is Inappropriate for Consideration on a Motion to Dismiss.

Walmart's argument that Plaintiffs should be forced to employ a complex and costly testing protocol on an unobtainable glucosamine sample set as a mandatory, pre-suit requirement ignores federal pleading requirements and the practical impossibility of pre-suit § 101.9(g)(2)-

compliant testing. Simply stated, Walmart's position puts the cart before the horse. Under Rule 8, "it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled give the defendant fair notice of what the claim is and the grounds upon which it rests, and allow the court to draw the reasonable inference that the plaintiff is entitled to relief." *Braden*, 588 F.3d at 595 (internal citations and quotations omitted). In those cases, where, as here, "plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences," the court "must also take account of their limited access to crucial information." *Id*. at 598 (further stating, "[i]f plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the [ERISA] statute will fail…"). In this case, Plaintiffs have sufficiently alleged their claims under Rule 8 particularly given the lack of commercially available § 101.9(g)-compliant sample set.

The issue before the Court is not a novel one. Rather, other courts have considered this same issue and held that the testing methodology found in § 101.9(g) is not a pleading requirement for Plaintiffs' claims. For example, in *Clay v. Cytosport, Inc*., the court rejected the identical argument made by Walmart here. No. 15-CV-165 L DHB, 2015 WL 5007884, at *3 (S.D. Cal. Aug. 19, 2015). Instead, under Rule 8, the plaintiff need only allege a plausible violation of the FDCA in order to survive dismissal. *Id.* In so finding, the court reasoned that:

> [Defendant's] argument is not appropriate for a motion to dismiss. Of course, in order to ultimately prevail on these claims, Plaintiffs will have to prove that Defendant did not comply with the FDCA provisions listed above. However, to state a claim, Plaintiffs only need to allege a plausible violation of the FDCA.

*Id*. at *4; *see also Smith v. Allmax Nutrition, Inc*., No. 1:15-CV-00744-SAB, 2015 WL 9434768, at *7–8 (E.D. Cal. Dec. 24, 2015) ("Rule 8 requires a plaintiff to state sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Based upon the allegations in the complaint, the Court can plausibly infer that tests conducted in compliance with the 12 sample methodology would support Plaintiff's allegations that the Product is mislabeled.")

5

The court in *Gubala v. CVS Pharmacy, Inc.* addressed this same issue and chose to follow the guidance of *Clay*, holding that § 101.9(g) mandated a method of proof rather than a pro forma pleading requirement:

> On a motion to dismiss for failure to state a claim, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level [.]'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). . . . Like the district courts in *Clay* and *Smith*, this Court holds that Plaintiff may rely on the testing results attached to the amended complaint to nudge his claims based on an overstated declaration of protein content "across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Whether independent testing along the lines of § 101.9(g)(2) confirms Plaintiff's claim of overstated protein content is an issue of proof, and Plaintiff does not need to prove his case at the pleading stage of the case.*

No. 14 C 9039, 2016 WL 1019794, at *8 (N.D. Ill. Mar. 15, 2016) (emphasis added); *see also Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 WL 5234596, at *6 (N.D. Ill. Sept. 22, 2016) (denying a motion to dismiss because "compliance with the 12-sample testing protocol is not a requirement at the pleading stage"); *Gubala v. HBS Int'l Corp.*, No. 14 C 9299, 2016 WL 2344583, at *4 (N.D. Ill. May 4, 2016) ("Plaintiffs are not required to plead compliance with § 101.9(g)(2) in order to survive a motion to dismiss.") In fact, the *Gubala v. CVS* court explicitly rejected the cases relied upon by Walmart in its motion, correctly finding that those cases improperly conflated the plaintiff's ultimate burden of proof with the plausibility pleading standard under *Twombly*. *Id.* at *8l.

Like the plaintiffs in *Clay* and *Smith*, Plaintiffs' allegations are substantiated by laboratory testing that confirms those allegations and their plausible entitlement to relief. *See, e.g.,* Compl. ¶ 27 ("Individual crystals from samples of Defendant's supplement labeled Glucosamine Sulfate were analyzed using Fourier-transform infrared spectroscopy (FT-IR). The results showed that each sample contained mixtures of glucosamine hydrochloride crystals and potassium sulfate crystals."); ¶ 28 ("These samples were mislabeled as containing glucosamine sulfate, a distinctly different chemical compound than glucosamine hydrochloride. None of the

6

individual crystals that were analyzed showed the presence of glucosamine sulfate. Blending two different crystals in a dry form does not create crystals that contain all of the components together. The analyses showed that these components remained separate."). Requiring Plaintiffs to present a full measure of expert evidence regarding Walmart's lack of compliance with the FDCA would needlessly allow federal preemption jurisprudence to supplant Rule 8's pleading standard when, in fact, they can be harmonized by following Rule 8 at the dismissal stage and § 101.9(g)'s methodology on summary judgment.

**B.      Plaintiffs are Not Required To Prove Defendant's Mislabeling By Using the § 101.9(g)(2) 12 Sample Set Methodology.**

Walmart argues that Plaintiffs are required to employ the § 101.9(g)(2) methodology in order to prove their claims but that is not correct. Section 101.9(g) deals with FDA enforcement of labeling standards rather than that of a private civil litigation under state law. The distinction is important because the FDA brings enforcement actions directly under the FDCA itself whereas private litigants bring civil claims under state law. Regardless, even under the regulations, Plaintiffs would not be bound to use the process employed by the FDA. The regulations state "[w]hen it is not technologically feasible, *or some other circumstance makes it impracticable*, for firms to comply with the requirements of this section . . . FDA may *permit alternative means of compliance* or additional exemptions to deal with the situation." 21 C.F.R. § 101.9(g)(9). The FDA's guidance further clarifies that:

> Section 101.9(g) sets out the methods that the agency will use for compliance determinations. Manufacturers may use nonofficial methods of analysis to establish nutrient content label values, but in doing so, they should ensure the validity of their methods with respect to applicability, specificity, sensitivity, accuracy, precision, and detectability. If they fail to do so, and their methods produce significantly different results than the official method, their label may subject them to regulatory action. Reliable and appropriate alternative analytical methods may be submitted to FDA for a review of their acceptability.

> Thus, by referencing new § 101.9, new § 101.13(o) does not preclude a manufacturer from using alternative analytical methods for determining nutrient content label values

*Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms;*
*Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food*,
58 FR 2302-01. The court in *Gubala v. CVS* agreed with this position, finding:

> If CVS can show regulatory compliance using other reliable methods, then it
> would make sense that Plaintiff should similarly be able to show non-compliance
> using other reliable methods. Whether this is the proper approach to § 101.9(g)(2)
> in the context of a private enforcement action or whether § 101.9(g)(2) is in fact a
> substantive requirement that Plaintiff would have to meet to establish liability on
> the part of CVS is simply not clear to the Court at this point in time. Because CVS
> bears the burden of persuasion on preemption issues, however, *see Russian Media*
> *Grp., LLC v. Cable Am. Inc.*, 598 F.3d 302, 309 (7th Cir. 2010), the Court is not
> prepared to dismiss the amended complaint on this basis.

*Gubala*, 2016 WL 1019794, at *9. Since Walmart is permitted to comply with its regulatory
labeling obligations by using methodologies that do not require a § 101.9(g)(2) sample set,
Plaintiffs are entitled to demonstrate the lack of compliance through those same methods –
certainly at the pleading stage.

### C.   Requiring Pre-Suit Compliance with § 101.9(g)(2) Would Effectively Immunize Defendant From Actions Based on Inaccuracies in Its Labeling.

The sample set required by § 101.9(g)(2) can only be obtained with the participation of
the manufacturer – be it through FDA-mandated cooperation or Court-enforced orders or
agreements (*i.e.* discovery or stipulations). This is because the § 101.9(g)(2) methodology
requires testing of a very specific set of samples. Under the regulation, the 12 subsamples chosen
for testing must be "taken 1 from each of 12 different randomly chosen shipping cases, to be
representative of a lot." 21 C.F.R. § 101.9(g)(2). Additionally, FDA has issued extensive and
cautionary guidance for sampling practices and, has warned that particular attention must be paid
to the manner in which samples are selected in order to provide scientifically sound results. "For
example, if the units are in crates that are stacked in layers on pallets, obvious bias (error) would
be introduced if the entire sample is drawn from only the top layer of crates on a single pallet or
from only the top layer of crates on several pallets." *Guidance For Industry FDA Nutrition*
*Labeling Manual -- A Guide For Developing and Using Data Bases*, 1998 WL 34327548, *13
(Mar. 1998) (setting forth the FDA's guidance for creating a nutritional database in order to

demonstrate "compliance with the provisions set forth in 21 C.F.R. 101.9(g)(1) through (g)(6)") FDA further warns that measures should be taken to "eliminate or at least reduce bias by avoiding practices such as drawing units from the same position in crates, pallets, stacks, or piles. Similarly, a sampler should not select units from one production line or sorting belt in lieu of others." *Id.*

Yet, unlike FDA, Plaintiffs do not have the ability to independently obtain such a sample set. The FDCA provides FDA with broad authority to investigate and obtain evidence to support a potential enforcement action for food misbranding *before initiating an enforcement action*. Specifically, 21 U.S.C. § 372 gives the FDA authorization "to conduct examinations and investigations" in executing its oversight authority. 21 U.S.C. § 374 allows the FDA "to enter . . . any factory, warehouse, or establishment in which food . . . [is] manufactured, processed, packed, or held, for introduction into interstate commerce" and "to inspect . . . such factory, warehouse, or establishment . . . and all pertinent equipment, finished and unfinished materials, containers, and labeling." 21 U.S.C. § 372(a)(1). Perhaps most importantly, 21 U.S.C. § 374 allows the FDA to take "sample[s] in the course of the inspection." 28 U.S.C. § 374(c).

Plaintiffs have no similar authority to obtain such a sample set before filing suit. The defendant would have to be subject to discovery in order for a plaintiff to obtain a sample set that would enable compliance with the FDA methodology. These practical considerations support a holding that compliance with § 101.9(g)(2) is only required as an issue of ultimate proof on the merits (if at all), and not a threshold pleading issue.

## II.   PLAINTIFFS' CLAIMS FOR BREACH OF THE IMPLIED WARRANTY SHOULD NOT BE DISMISSED.

Walmart argues that Plaintiffs have failed to properly allege the glucosamine products at issue are not merchantable. Def. Br. 12. Walmart contends that "Plaintiffs' allegations target the *quality* of the products…, rather than the *merchantability* of these products." *Id.* (emphasis in original). Yet Walmart ignores any allegations that contradict its chosen argument. It claims that "Plaintiffs' Complaint contains no well-pleaded allegations that the products were unfit for their

ordinary purpose[.]" Def. Br. 12. That is untrue. Plaintiffs specifically allege that the glucosamine dietary supplements "were not fit for ordinary purposes." Compl. ¶¶ 56, *I*60. In particular, Plaintiffs alleged that the glucosamine supplements were purchased in order for consumers to reduce the pain of osteoarthritis. While glucosamine sulfate has been shown to do that, Walmart's supplements do not actually contain glucosamine sulfate. *Id*. at ¶¶ 2-3. Instead they contain glucosamine hydrochloride and potassium sulfate – less expensive ingredients with *no proven efficacy in addressing the pain of osteoarthritis. Id*. Thus, Plaintiffs allege that Walmart's glucosamine supplements are not fit to do what they are represented and purchased to do – reduce pain from osteoarthritis. Plaintiffs have sufficiently alleged their implied warranty clams.

Walmart relies on *Penrose v. Buffalo Trace Distillery, Inc*., No. 4:17CV294 HEA, 2018 U.S. Dist. LEXIS 18340, at *17 (E.D. Mo. Feb. 5, 2018), for the proposition that a breach should relate to the merchantability of a product, not its quality. Def. Br. 12. However, this portion of the *Penrose* decision is factually distinguishable from this case. In *Penrose*, the issue was that Defendants' represented that their bourbon "is an 8-year aged bourbon," when in fact it "used to be aged for 8 years, but Defendants stopped that practice in approximately January 2014." *Penrose*, 2018 U.S. Dist. LEXIS 18340, at *2. So in *Penrose*, the bourbon sold in the container was in fact bourbon, but it may not have aged for as long as the label indicated.

In contrast to *Penrose*, here Plaintiffs allege a misrepresentation that is very different from the age or quality of the product. Plaintiffs allege a misrepresentation that goes to the fundamental nature of the product. The bottle contains supplements with an entirely different chemical compound than what the labeling claims. Compl. ¶¶ 2, 27-29. Plaintiffs allege that Walmart sells "glucosamine supplements with mislabeled ingredients, identifying their contents as glucosamine sulfate, when in fact the supplements contain glucosamine hydrochloride and potassium sulfate, less expensive ingredients with no proven efficacy." *Id*. at ¶ 2. Thus, *Penrose* does not support Walmart's argument.

10

## III.   PLAINTIFFS' CLAIM FOR VIOLATION OF THE MAGNUSSON-MOSS WARRANTY ACT ("MMWA") (COUNT II) SHOULD NOT BE DISMISSED.

Misstating *Scott v. Blue Springs Ford Sales, Inc*., 215 S.W.3d 145, 184 (Mo. Ct. App. 2006), *overruled on other grounds, Badahman v. Catering St. Louis*, 395 S.W.3d 29 (Mo. 2013), Walmart argues that Plaintiffs' MMWA claim must be dismissed because "[t]he MMWA requires a plaintiff to afford the defendant a reasonable opportunity to cure the defendant's failure to comply with a warranty before filing a claim." Def. Br. 11. However, Walmart conveniently fails to state the second, more important, sentence of the *Scott* opinion:

> [I]n order to make a submissible case of breach of warranty under the MMWA, the plaintiff must show that, prior to filing the lawsuit, he provided the defendant with a reasonable opportunity to cure the alleged breach of warranty and defendant refused to cure it. However, if the defendant knew of the defect at the time of sale, *then the plaintiff is relieved of showing that the defendant was given an opportunity to cure the defect and failed to do so.*

*Id*. (emphasis added, internal citations omitted). Plaintiffs allege that Walmart knew the representations about its glucosamine products were false. Compl. ¶¶ 76, 83, 92, 101. Therefore, Plaintiffs are not required to plead or show that Walmart was given an opportunity to cure the breach.

Equally important is the fact that the MMWA itself has different pleading standards for individual actions and class actions:

> For individual plaintiffs, Section 2310(e) is a condition precedent to filing suit unless the warrantor establishes an informal dispute settlement procedure pursuant to Section 2310(a)(3). In contrast, plaintiffs bringing a class action *may file suit before the defendant is afforded an opportunity to cure* for the limited purpose of establishing the representative capacity of the named plaintiffs.

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig*., 880 F. Supp. 2d 801, 824 (S.D. Ohio 2012) (citations omitted) (emphasis added); *accord, e.g., Manier v. L'Oreal U.S.A., Inc. (In re Amla Litig.)*, No. 16-cv-6593 (JSR), 2017 U.S. Dist. LEXIS 116139, at *34 (S.D.N.Y. July 17, 2017) ("[The cure] requirement does not yet apply, as a MMWA claim can proceed up until class certification without the named plaintiffs affording the defendant in question an opportunity to cure."); *In re Lumber Liquidators Chinese-Manufactured Flooring*

11

*Durability Mktg. & Sales Practice Litig.*, No. 1:16md2743 (AJT/TRJ), 2017 U.S. Dist. LEXIS 105335, at *51-53 (E.D. Va. July 7, 2017) (same).

## IV. PLAINTIFF GARTH'S UNJUST ENRICHMENT CLAIM IS NOT REDUNDANT AND MAY BE PLED AS AN ALTERNATIVE CLAIM FOR RELIEF.

Plaintiffs claim that Walmart's labeling practices mislead consumers regarding the formulation of their glucosamine supplements. Compl. ¶¶ 4, 56, 72, 86. "Consumers rely on those labels to be truthful and not misleading when making purchasing decisions, and they have a right to so rely." *Penrose*, 2018 U.S. Dist. LEXIS 18340, at *13. Plaintiffs allege they would not have purchased Walmart's glucosamine products had they been aware of the false or misleading nature of the labels. Compl. ¶¶ 5, 9, 10, 11, 12, 14, 76, 78, 87, 96, 104. "[I]t would be unjust to permit [Walmart] to retain the monetary benefit derived from Plaintiffs' purchases if, in fact, its labels are false or misleading. Thus, Plaintiff[s] ha[ve] successfully stated a claim for unjust enrichment." *Penrose*, 2018 U.S. Dist. LEXIS 18340, at *14. The same rationale holds true for Plaintiff Garth's unjust enrichment claim and it should be allowed to proceed.

Walmart claims that Plaintiff Garth's unjust enrichment claim should be dismissed because it is redundant of his FDUTPA claim that would offer an adequate remedy at law. Walmart bases its argument on two cases, *Guerrero v. Target*, 889 F. Supp. 2d 1348, 1356-57 (S.D. Fla. 2012), and *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1341-42 (S.D. Fla. 2011). Def. Br. 13. The holding common to both cases has been rendered obsolete by a decision from the Court of Appeals for the Eleventh Circuit in the case of *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc*., 427 F. App'x 714 (11th Cir. 2011).

Courts interpreting *State Farm* construe the decision as "establishing that unjust enrichment claims are available notwithstanding the existence of adequate legal remedies." *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880, at *83-84 n.23 (E.D.N.Y. Sep. 22, 2015); *accord, e.g., Aero. Precision, Inc. v. NexGen Aero, Ltd. Liab. Co.*, No. 17-CV-61106-WPD, 2017 U.S. Dist. LEXIS 159888, at *16-17 (S.D. Fla. Sep. 27, 2017); *see also In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice*

12

*Litig*., 955 F. Supp. 2d 1311, 1337 (S.D. Fla. 2013) (noting disagreement among Florida courts as to whether unjust enrichment claim may be asserted where adequate legal remedies exist and stating "[t]he Eleventh Circuit recently addressed this issue" in *State Farm* and established that only showing of express contract precludes unjust enrichment claim).

Moreover, the judge in *Guerrero* has since abandoned his holding in *Guerrero* in light of *State Farm. See Stoltz*, 2015 U.S. Dist. LEXIS 126880, at \*83-84 n.23. In *Reilly v. Amy's Kitchen, Inc*., No. 13-CV-21525, 2013 U.S. Dist. LEXIS 188683, 2013 WL 9638985 (S.D. Fla. Dec. 9, 2013), Judge Cohn held that *State Farm* should control when determining whether to dismiss an unjust enrichment claim as duplicative of a claim under FDUTPA. *Id*. at \*7. He also acknowledged in *Reilly* that the holding is inconsistent with his previous holding in *Guerrero*, but he explains that the Court was unaware of the *State Farm* decision when he decided *Guerrero*.

## V.   PLAINTIFFS HAVE STANDING TO PURSUE INJUNCTIVE AND DECLARATORY RELIEF.

### A.   Plaintiffs Have Sufficiently Alleged Standing.

Walmart argues that Plaintiffs cannot establish standing for their equitable relief claims because they "do not allege that they will be injured in the future[.]" Def. Br. 14. Another court in this district has expressly rejected this argument. *Hawkins v. Nestle U.S.A., Inc*., No. 4:17CV205 HEA, 2018 U.S. Dist. LEXIS 19933, at \*20-21 (E.D. Mo. Feb. 7, 2018).

In the *Hawkins* opinion, Judge Autrey first noted that the plaintiff alleged: (1) she was misled by the packaging to believe the boxes contained more product than they actually did; (2) she suffered an ascertainable loss; (3) that had she known the boxes contained substantial slack-filled space she would not have purchased them or would have purchased them on different terms; and (4) that [the d]efendant continues to sell slack-filled candy boxes, i.e., the unlawful practice is ongoing." *Id*. at \*22. Judge Autrey went on to conclude that "the fact that Plaintiff discovered Defendant's allegedly unlawful practice does not make the packaging less misleading, nor mean that the practice is not ongoing. "[A p]laintiff need plead nothing more to

survive a motion to dismiss a request for injunctive relief for lack of Article III standing." *Hawkins*, 2018 U.S. Dist. LEXIS 19933, at *22-23 (citing, *inter alia, Chester v. TJX Companies, Inc*., 2016 U.S. Dist. LEXIS 110342, at *8 (C.D. Cal. Aug. 18, 2016) ("It is inconceivable to think prospective relief in the false advertising context is bound by the rules of 'fool me once, shame on you; fool me twice shame on me.' The Court...refuses to find that, once a plaintiff has alleged that she was deceived, she likely will not voluntarily be deceived again—and thus no court can enjoin deceptive practices without ignoring Article III's standing requirements."); *accord, e.g., Bratton v. Hershey Co*., No. 2:16-cv-4322-C-NKL, 2017 U.S. Dist. LEXIS 74508, at *24-26 (W.D. Mo. May 16, 2017) (finding that plaintiff had standing); *Webb v. Dr. Pepper Snapple Grp., Inc.*, No. 4:17-00624-CV-RK, 2018 U.S. Dist. LEXIS 71270, at *20-24 (W.D. Mo. Apr. 25, 2018) (same but noting split of authority).

Just like the allegations in *Hawkins*, Plaintiffs allege that: (1) they were "misled by Walmart's false representations into purchasing these mislabeled supplements," Compl. ¶ 5; (2) they suffered ascertainable losses, *id*. ¶¶ 47, 61, 79, 104, 105; (3) they "would not have purchased these supplements had Defendant disclosed accurate information about their ingredients," *id*. ¶¶ 5, 9-14, 30, 76, 78, 87, 96, 104; and (4) Walmart still sells deceptively packaged glucosamine supplements to an unsuspecting public, *see id*. ¶¶ 2, 4, 15.[2] The fact that Plaintiffs discovered Walmart's unlawful practices does not mean the unlawful practice has ceased. Like the slack-filled products in *Hawkins*, Walmart continues to sell mislabeled glucosamine supplements so *Hawkins* supports a finding that Plaintiffs have standing to pursue injunctive and declaratory relief based on their allegations.

---

[2] Judge Autrey also found in *Hawkins* that "Plaintiff has also pled that she would personally benefit in a tangible way from injunctive relief, by alleging that if Defendant changes its practices, she is likely to buy the products in the future, and that she seeks to be relieved from Defendant's unlawful practice by the issuance of injunctive relief." *Hawkins*, 2018 U.S. Dist. LEXIS 19933, at *21-22. To the extent the Court feels Plaintiffs' Complaint lacks these specific allegations, Plaintiffs request an opportunity to amend.

### B.       Plaintiffs May Assert Alternative Remedies.

Walmart concludes its brief with a purely legal argument that the equitable relief claims "should also be dismissed because the Complaint shows that Plaintiffs will have an adequate remedy at law[.]" Def. Br. 15.[3] A decision on which remedy is appropriate is premature at the motion to dismiss stage:

> The existence of an adequate remedy at law may foreclose [the plaintiff]'s access to equitable remedies. However, the Court concludes that the motion to dismiss Count 4 is premature. At the motion to dismiss stage, Plaintiff is allowed to plead legal and equitable remedies in the alternative.

*Schindler v. James Hardie Bldg. Prods. (In re Hardieplank Fiber Cement Siding Litig.)*, No. 12-md-2359, 2014 U.S. Dist. LEXIS 89113, at *14 (D. Minn. June 30, 2014) (*citing Daigle v. Ford Motor Co*., 713 F. Supp. 2d 822, 828 (D. Minn. 2010); *see also Podpeskar v. Makita U.S.A. Inc*., 247 F. Supp. 3d 1001, 1013 (D. Minn. 2017) ("[T]he Court will grant [defendant]'s motion with regard to [plaintiff]'s stand-alone declaratory and injunctive relief claim, but [plaintiff] remains free to seek declaratory and injunctive relief as a remedy."). Consequently, Walmart's motion to dismiss Plaintiffs' alternative claims for equitable remedies should be denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Complaint should be denied.

---

[3] Walmart's motion cites a number of Missouri state court decisions. Def. Br. 14. However, federal law controls pleading requirements in federal courts. "The particular holdings of ServiceMaster and other state law cases cited by defendants are that a plaintiff who chooses not to pursue available remedies at law cannot recover under principles of equity. Plaintiffs in this case clearly have chosen to pursue remedies at law and argue for equitable remedies only in the alternative as permitted by Federal Rule of Civil Procedure 8. Accordingly, the Court denies defendants' motion for judgment on the pleadings with regard to plaintiffs' claims for unjust enrichment." *Johnson v. Johnson & Johnson (In re Levaquin Prods. Liab. Litig.)*, 752 F. Supp. 2d 1071, 1081 (D. Minn. 2010) (internal citations omitted).

Dated: July 18, 2018                              Respectfully submitted,

                                                  */s/ Eric S. Johnson*
                                                  Eric S. Johnson, #89500
                                                  Paul J. Hanly, Jr. (*pro hac vice* forthcoming)
                                                  Mitchell M. Breit (*pro hac vice* forthcoming)
                                                  **SIMMONS HANLY CONROY LLC**
                                                  112 Madison Avenue
                                                  New York, New York 10016-7416
                                                  Telephone: (212) 784-6400
                                                  Facsimile: (212) 213-5949
                                                  ejohnson@simmonsfirm.com
                                                  phanly@simmonsfirm.com
                                                  mbreit@simmonsfirm.com

                                                  Gregory F. Coleman (*pro hac vice* to be submitted)
                                                  Mark E. Silvey (*pro hac vice* to be submitted)
                                                  Adam A. Edwards (*pro hac vice* to be submitted)
                                                  Lisa A. White (*pro hac vice* to be submitted)

                                                  **GREG COLEMAN LAW PC**
                                                  First Tennessee Plaza
                                                  800 S. Gay Street, Suite 1100
                                                  Knoxville, Tennessee 37929
                                                  Telephone: (865) 247-0080
                                                  Facsimile: (865) 533-0049
                                                  greg@gregcolemanlaw.com
                                                  mark@gregcolemanlaw.com
                                                  adam@gregcolemanlaw.com
                                                  lisa@gregcolemanlaw.com

                                                  *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 18, 2018, the foregoing was filed using the Court's CM/ECF system and will be served via the Court's CM/ECF filing system on all attorneys of record.

Dated: July 18, 2018                              */s/ Eric S. Johnson*
                                                  Eric S. Johnson

16