# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| CYNTHIA PARKER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:18-CV-00465-JAR |
| | ) |
| Wal-Mart Stores, Inc., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Wal-Mart Stores, Inc.'s Motion to Dismiss. (Doc. 11.) Plaintiffs responded in opposition (Doc. 18), and Defendant replied (Doc. 21).

### Background

Plaintiffs are four individuals—residents of Florida, Missouri, Tennessee, and Wisconsin, respectively—seeking to represent a nationwide class of consumers who purchased glucosamine dietary supplements at Wal-Mart. (Doc. 1 at 1-2.) Plaintiffs assert that "glucosamine sulfate has been shown to reduce the pain of osteoarthritis, in knees in particular, and can be equally as effective as Tylenol and some nonsteroidal anti-inflammatory drugs." (*Id*. at 2.) Plaintiffs allege, however, that Defendant's glucosamine supplement label lists glucosamine sulfate as an ingredient "when in fact the supplements contain glucosamine hydrochloride and potassium sulfate, less expensive ingredients with no proven efficacy." (*Id*. at 1-2.) Plaintiffs assert that "Defendant has long known that there is scant or conflicting evidence about the effectiveness of glucosamine hydrochloride for the treatment of osteoarthritis," and "knew, or in the exercise of

reasonable diligence should have known, that its representations regarding the Glucosamine dietary supplements it sold were false or deceptive." (*Id*. at 2, 17.)

Put simply, Plaintiffs allege that Defendant's mislabeled glucosamine supplements induced them to purchase a product that was ineffective and unfit for treating their joint pain and seek monetary damages as well as declaratory and injunctive relief. Plaintiffs advance seven specific claims for relief:

> **Count I** – Breach of implied warranties in violation of the Magnuson-Moss Warranty Act ("MMWA");
>
> **Count II** – Breach of implied warranties in violation of Florida, Missouri, Tennessee, and Wisconsin state law;
>
> **Count III** – Unjust enrichment or quasi-contract;
>
> **Count IV** – Negligent misrepresentation:
>
> **Count V** – Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA");
>
> **Count VI** – Violation of the Missouri Merchandising Practices Act; and
>
> **Count VII** – Unfair trade practices in violation of Wisconsin state law.

(Doc. 1 at 19-32.) Defendant argues that Plaintiffs' claims are all subject to dismissal because they are preempted by federal law or fail on their merits and adds that Plaintiffs lack standing to seek equitable relief. (Doc. 12.)

## Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 768 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## Discussion

As noted, Defendant attacks Plaintiffs' claims three ways: preemption by federal law; failure on the merits; and lack of standing. (Doc. 12.)

*1. Preemption*

Defendant begins by arguing that Plaintiffs' state-law claims are preempted by federal law. "The Supremacy Clause provides that the laws and treaties of the United States 'shall be the supreme Law of the Land.'" U.S. Const., Art. VI, cl. 2. "Accordingly, it has long been settled that state laws that conflict with federal law are 'without effect.'" *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 479-80 (2013) (quoting *Maryland v. Louisiana,* 451 U.S. 725, 746 (1981)). The same principal applies to state laws that conflict with federal regulations. *See, e.g.*, *Missouri Child Care Ass'n v. Cross*, 294 F.3d 1034, 1041 (8th Cir. 2002).

Labeling of dietary supplements is governed by the federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301-399, specifically, the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. §§ 341-350l. The FDCA classifies dietary supplements as "food," which it defines as "articles for food or drink for man or other animals." 21 U.S.C. § 321(f), (ff). Because individual states may not "directly or indirectly establish . . . any requirement for nutrition labeling of food that is not identical to [that section,]" 21 U.S.C. § 343-1(a)(4), state-law labeling regimes are preempted to the extent they attempt to add additional requirements.

The practical effect of Defendant's preemption argument is that Plaintiff's allegations of mislabeling must be premised on Defendant's failure to meet the NLEA standards. The FDCA provides a specific protocol for testing compliance with the NLEA: under 21 C.F.R. §§ 101(g), compliance with the labeling requirement is determined by testing twelve consumer packages of the food, taken from twelve randomly chosen shipping cases, using "appropriate methods as

given in the 'Official Methods of Analysis of the AOAC International,' or, if no AOAC method is available or appropriate, by other reliable and appropriate analytical procedures."

Plaintiffs allege that they discovered a mixture of glucosamine hydrochloride and potassium sulfate when they subjected "individual crystals from samples of Defendant's supplement" to "Fourier-transform infrared spectroscopy (FT-IR)." (Doc. 1 at 9.) Plaintiffs do not allege that Defendant's supplements fail to meet NLEA standards based on the FDCA protocol. Accordingly, Defendant argues that Plaintiffs have failed to allege a necessary element of their mislabeling argument and that their complaint must be dismissed. (Doc. 21 at 3.)

Plaintiffs respond that Defendant's argument is premature. (Doc. 18 at 4.) They cite a number of cases in which courts have held that the FDCA's testing protocol is too onerous a standard for initial pleadings. (*Id.* at 5-6.) In *Clay v. Cytosport, Inc.*, No. 15-CV-165 L DHB, 2015 WL 5007884, at *4 (S.D. Cal. Aug. 19, 2015), the court noted, "Of course, in order to ultimately prevail on these claims, Plaintiffs will have to prove that Defendant did not comply with the FDCA provisions listed above. However, to state a claim, Plaintiffs only need to allege a plausible violation of the FDCA." In *Smith v. Allmax Nutrition, Inc.*, No. 1:15-CV-00744-SAB, 2015 WL 9434768, at *7 (E.D. Cal. Dec. 24, 2015), the court denied dismissal and concluded, "Based upon the allegations in the complaint, the Court can plausibly infer that tests conducted in compliance with the 12 sample methodology would support Plaintiff's allegations that the Product is mislabeled."

In *Gubala v. CVS Pharmacy, Inc.*, the plaintiff was allowed to "rely on the testing results attached to the amended complaint to nudge his claims based on an overstated declaration of protein content 'across the line from conceivable to plausible.'" No. 14 C 9039, 2016 WL 1019794, at *8 (N.D. Ill. Mar. 15, 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). The court warned that "independent testing along the lines of § 101.9(g)(2)" would remain an issue of proof going forward but concluded that the plaintiff "does not need to prove his case at the pleading stage." *Id*; *see also*, *Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 WL 5234596, at *6 (N.D. Ill. Sept. 22, 2016); *Gubala v. HBS Int'l Corp.*, No. 14 C 9299, 2016 WL 2344583, at *4 (N.D. Ill. May 4, 2016).

Defendant notes that Plaintiffs' cited cases all come from the same three district courts and that numerous other districts have reached the opposite conclusion. (Doc. 21 at 3 (citing *In re: Whole Foods Mkt., Inc.*, 163 F. Supp. 3d 385, 394 (W.D. Tex. 2016); *Mee v. I A Nutrition, Inc.*, No. C-14-5006 MMC, 2015 WL 2251303, at *3 (N.D. Cal. May 13, 2015); *Bruaner v. MusclePharm Corp.*, No. CV 14-8869 FMO (AGRx), 2015 WL 4747941, at *9 (C.D. Cal. Aug. 11, 2015); *Dougherty v. Source Nats., Inc.*, 148 F. Supp. 3d 831, 836 (E.D. Mo. 2015); *Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1313 (E.D. Cal. 2014)).)

This Court looks to the only cited case from this district, *Dougherty*. In that case, the plaintiff brought a putative class action under the Missouri Merchandizing Practices Act, alleging that the defendant's multivitamin "misrepresent[ed] on the label the amount of 6 key vitamins and minerals." *Dougherty*, 148 F. Supp. 3d at 833. The defendant moved to dismiss the suit on the ground that the plaintiff did not allege that the multivitamin failed to meet the NLEA's labeling requirements as measured by the FDCA protocol. *Id*. at 835-36. The Court granted the defendant's motion and dismissed the case, finding that "Plaintiff has failed to allege that her product testing complied with the FDCA 12-sample testing method set forth in 21 C.F.R. § 101.9(g)." *Id*. at 836.

The Court notes that there is reason to distinguish this case from *Dougherty* in one important aspect: the basis of Plaintiffs' claims. Indeed, the *Dougherty* Court noted that "[the

plaintiff's] claims do not solely arise from a misleading label. Instead, [she] explicitly alleges that the Defendant falsely states the nutritional content of its product, as revealed through [her] testing. This implicates the testing methods required by 21 C.F.R. § 101.9(g)." *Id*. In this case, Plaintiffs' claims *do* arise from an allegedly misleading label. (Doc. 1.)

Still, the Court finds the reasoning of *Dougherty* persuasive insofar as it suggests that any NLEA claim that relies on scientific testing of a food's nutritional components must include an allegation that the food does not meet the labeling requirements when subjected to the twelve-sample FDCA protocol. In light of *Dougherty*, this Court finds that Plaintiffs' complaint must include an allegation that the Defendant's supplement fails to meet the NLEA requirements when tested by the FDCA protocol. In other words, a plaintiff must allege the failure to meet the FDCA standard to have pled a viable NLEA violation. Plaintiffs have not done so here and therefore the Court will dismiss Counts II through VII.

Put simply, Plaintiffs have failed to allege a necessary element for a NLEA violation, and therefore they cannot state a facially plausible MMWA claim. And, because the Supremacy Clause preempts state-law labeling requirements unless they are identical to the NLEA, Plaintiffs' state-law claims fail for the same reasons. That said, the Court will also follow *Dougherty* in granting Plaintiffs leave to amend their complaint to resolve their failure to allege the prerequisite testing, if they can.

### 2. Merits

Defendant further argues that many of Plaintiffs' claims fail on their own merits. (Doc. 12 at 2.) Specifically, Defendant asserts that Counts I, II, III, V, and VI should be dismissed. (*Id.*)

### a. Count I – Breach of Implied Warranty of Merchantability under the MMWA

A plaintiff cannot advance a breach-of-warranty claim under the MMWA "unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply." 15 U.S.C. § 2310(e); *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 184 (Mo. Ct. App. 2006), *overruled on other grounds by Badahman v. Catering St. Louis*, 395 S.W.3d 29 (Mo. 2013). Defendant asserts that Plaintiffs' complaint lacks any allegation that they provided Defendant with the required notice. (Doc. 12 at 11-12.)

Plaintiffs respond that "[when] the defendant knew of the defect at the time of sale, then the plaintiff is relieved of showing that the defendant was given an opportunity to cure the defect and failed to do so." *Scott*, 215 S.W.3d at 184. They point to the allegation in their complaint that Defendant "knew, or in the exercise of reasonable diligence should have known, that its representations regarding the Glucosamine dietary supplements it sold were false or deceptive." (Doc. 1 at 17.) Alternatively, Plaintiffs argue that "plaintiffs bringing a class action may file suit before the defendant is afforded an opportunity to cure for the limited purpose of establishing the representative capacity of the named plaintiffs." (Doc. 18 at 11 (quoting *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 824 (S.D. Ohio 2012)).

Defendant replies that actual knowledge is required and that therefore Plaintiffs' "knew or should have known" allegation is insufficient. (Doc. 12 at 11-12.) Further, it argues that Plaintiffs have not alleged that they filed suit solely to establish their representative capacity and that there is no reason to conclude that they intend to ask the Court to stay the suit to allow Defendant its statutory opportunity to cure the alleged defect. (Doc. 21 at 10-12.)

The Court concludes that the MMWA requires pre-suit notice and that the allegations in Plaintiffs' complaint, even taken as true, are insufficient to show that Defendant "knew of the

defect at the time of the sale." *Scott*, 215 S.W.3d at 184. Accordingly, Plaintiffs' MMWA claim is subject to dismissal for failure to provide Defendant an opportunity to address the alleged defect. However, because the Court already intends to grant leave to amend, it will allow Plaintiffs to amend Count I to allege actual knowledge, if they can.

> b. *Counts I and II – Breach of Implied Warranty of Merchantability under the MMWA and state law*

The MMWA creates a private right of action for any consumer who is damaged by a failure to comply with an implied warranty, including implied warranties that arise under state law. 15 U.S.C. §§ 2301(7), 2310(d)(1). Florida, Missouri, Tennessee, and Wisconsin all impose an implied warranty of merchantability that goods are "fit for the ordinary purposes" for which they are used. Fla. Stat. § 672.314; Mo. Rev. Stat. § 400.2-314; Tenn. Code Ann. § 47-2-314; Wis. Stat. § 402.314. Plaintiffs argue that Defendant's glucosamine supplements are not fit for their ordinary purpose, to wit: reducing pain from osteoarthritis. (Doc. 18 at 10.)

Defendant argues that because dietary supplements are classified as "food," their ordinary purpose is simply to be "wholesome and fit for human consumption at the time of purchase." *Morris v. Nutri/Sys., Inc.*, 774 F. Supp. 889, 891 (D. Vt. 1991) (quoting *DiGregorio v. Champlain Valley Fruit Co., Inc.*, 127 Vt. 562, 565, 255 A.2d 183, 185 (1969)); *see also Penrose v. Buffalo Trace Distillery, Inc.*, No. 4:17CV294 HEA, 2018 WL 705054, at *6 (E.D. Mo. Feb. 5, 2018) ("The products at issue are food products, and Plaintiffs' allegations give no reason to believe that the products were unfit for their ordinary purpose: consumption as food by humans."). Because Plaintiffs do not allege that Defendant's glucosamine supplements are unfit for human consumption, Defendant argues that it has not breached any implied warranty of merchantability. (Doc. 12 at 12.)

Moreover, Defendant asserts that Plaintiffs' argument goes to the quality of the supplements rather than their merchantability, noting that "the implied warranty of merchantability does not mean a promise by the merchant that the goods are exactly as the buyer expected," only that the goods are fit for their ordinary purpose. *Penrose*, 2018 WL 705054, at *6. "[A]llegations that the products did not meet Plaintiffs' expectations . . . [are] not sufficient to establish a breach of the implied warranty of merchantability." *Id.*

The Court concludes that Plaintiffs' failure to allege that Defendant's glucosamine supplements are unfit for human consumption is fatal to Counts I and II. It agrees with the reasoning in *Penrose* and holds that the ordinary purpose of food is consumption by humans. Any greater expectation is above and beyond the minimum requirement of merchantability. However, because the Court already intends to grant leave to amend, it will allow Plaintiffs to amend Counts I and II to allege that Defendant's supplements are unfit for human consumption, if they can.

### c. Count III – Plaintiff Reba Garth's Claim for Unjust Enrichment under Florida Law

Plaintiffs seek relief under their respective states' law on a theory of unjust enrichment, arguing that Defendant is not entitled to the value of their purchases. (Doc. 1 at 24.) Defendant argues that Plaintiff Garth's claim is barred because Florida law prohibits unjust enrichment claims when a plaintiff has an adequate remedy at law. *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356 (S.D. Fla. 2012). Plaintiffs respond that the Eleventh Circuit has recently held that, while "[i]t is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist . . . that rule does not apply to unjust enrichment claims." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011), *rev'd in part on other grounds sub nom. State Farm Mut. Auto. Ins. Co. v. Williams*, 824

F.3d 1311 (11th Cir. 2014) (citing *Williams v. Bear Stearns & Co.,* 725 So.2d 397, 400 (Fla. 5th DCA 1998)). Defendant characterizes *State Farm* as indicative of a split of authority among Florida courts but insists the earlier line of cases is better reasoned. (Doc. 21 at 15.)

The Court concludes that *State Farm* unequivocally supports Plaintiff Garth's claim and, in the absence of any contrary authority from the Eleventh Circuit, will allow the claim to proceed as alleged.

### d. *Counts V and VI – Violations of FDUTPA and Missouri Merchandizing Practices Act*

In their complaint, Plaintiffs advanced claims under Florida and Missouri law, alleging that the labeling on Defendant's supplements was deceptive. (Doc. 1 at 26-31.) Defendant argued that both claims should be dismissed because Florida and Missouri law required pre-suit notice. (Doc. 12 at 13.) Plaintiffs concede that they failed to provide Defendant with the required notice. (Doc. 18 at 2 n.1.) Accordingly, the Court will dismiss Counts V and VI with prejudice.

### 3. *Standing to Pursue Injunctive and Declaratory Relief*

Lastly, Defendant argues that Plaintiffs lack standing to seek equitable relief because they face no risk of future injury. Constitutional standing requires that the plaintiff has suffered an "actual or imminent" injury to a legally protected interest. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Accordingly, unless a plaintiff can show that she is "likely to suffer some future injury," she does not have standing to pursue an injunction against the defendant's action. *Meagley v. City of Little Rock*, 639 F.3d 384, 391 (8th Cir. 2011).

Defendant argues that Plaintiffs not only fail to allege likelihood of future injury, they make the opposite assertion—that they would not have purchased Defendant's glucosamine supplement had they known it contained glucosamine sulfate. (Doc. 12 at 14 (citing Doc. 1 at 4-5).) In other words, Defendant argues that Plaintiffs' only exposure to future injury is their knowing purchase of supplements they do not want.

Plaintiff responds by citing to this Court's decision in *Hawkins v. Nestle U.S.A. Inc.*, 309 F. Supp. 3d 696, 707-08 (E.D. Mo. 2018), holding that the argument Defendant advances in this case would all but eliminate injunctions against deceptive practices. Because Defendant's allegedly deceptive practices continue, Plaintiffs argue, injunctive relief is appropriate. (Doc. 21 at 13-14.)

The Court agrees with the reasoning of *Hawkins*: "[T]he fact that Plaintiff[s] discovered Defendant's allegedly unlawful practice does not make the packaging less misleading, nor mean that the practice is not ongoing. Plaintiff[s] need plead nothing more to survive a motion to dismiss a request for injunctive relief for lack of Article III standing." *Hawkins*, 309 F. Supp. 3d at 707.

## Conclusion

For the foregoing reasons, the Court concludes that Plaintiffs do not state a facially plausible MMWA claim and that their state-law claims are preempted to the extent they seek to impose liability based on Defendant's allegedly misleading label. In addition, the Court concludes that Counts I, II, V, and VI, as alleged, lack merit. The Court will grant Plaintiffs leave to amend their complaint to cure the defects discussed above, if they can.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs are granted leave to file an amended complaint **within seven days of the date of this order.** If Plaintiffs fail to file an amended complaint in the time specified, the Court will grant Defendant's motion and dismiss the complaint without prejudice.

Dated this 12th Day of February, 2019.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE